UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL MOORE, | ) | CASE NO.: 1:25-cv-00967 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| BALBOA CAPITAL CORPORATION, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

For the reasons stated herein, the Court *sua sponte* concludes it lacks subject matter jurisdiction over this case. This case is hereby DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(h)(3), and Defendant Balboa Capital Corporation's Motion to Dismiss (Doc. 30) is DENIED as moot.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jamal Moore ("Plaintiff" or "Moore"), proceeding *pro se*, is the operator and sole member of Hero Solutions, LLC ("Hero").[1] In 2022, Moore entered into an Equipment Financing Agreement ("EFA") with Defendant Balboa Capital Corporation ("Defendant" or "Balboa") to finance a 2017 Freightliner M2 truck on behalf of Hero. (Doc. 29 at 737; Doc. 29-13 at 810-19.)[2] Moore also executed a Personal Guaranty that same day, creating individual obligations for truck payments. (Doc. 29 at 737; Doc. 29-13 at 820.) He stopped making payments on the truck in February 2025. (Doc. 29 at 737.) In the following weeks, Moore sent Balboa three letters requesting "clarification of specific contract terms, including acceleration

---

[1] Moore has amended his complaint to proceed only in his individual capacity as a personal guarantor and not on behalf of Hero. (*Compare* Doc. 1 ¶ 7 *with* Doc. 29 at 735.)

[2] For ease and consistency, briefing citations reflect the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

provisions, fees, and enforcement rights" (Doc. 29 at 737-38)[3] though Moore "does not deny . . . owing contractual obligations" (Doc. 29 at 735) and "explicitly stated [those letters were] not a refusal to pay" (Doc. 29 at 737). Notwithstanding Moore's letters, Balboa issued a formal Notice of Default on March 19, 2025, informing him that his failure to make payments constituted a default under the EFA and Personal Guaranty. (Doc. 29 at 738; Doc. 29-6.) The next day, Balboa issued an Acceleration Demand Letter to Moore, copying credit bureaus Dun & Bradstreet and Experian on the communication. (Doc. 29 at 738; Doc. 29-7.) During the month of April, a third-party repossession agent named "Allen" from Great Lakes Asset Solutions began contacting Moore, and at one point Moore's mother, to request the location of the truck to arrange repossession. (Doc. 29 at 738; Doc. 29-10; Doc. 29-11.) "Allen" also warned that impoundment of personal property could occur if there were any load on the truck. (Doc. 29 at 738; Doc. 29-10 at 793-94.)

Moore had filed complaints with the Consumer Financial Protection Bureau ("CFPB") (Doc. 29-12 at 804), Federal Trade Commission (Doc. 29-12 at 807), the Ohio Attorney General (Doc. 29-12 at 806), and the California Attorney General (Doc. 29-12 at 805). (Doc. 29 at 739.) In response to the CFPB complaint, Balboa claimed that "the dispute arose solely from [Moore's] nonpayment" but did not mention any of Moore's letters requesting clarification on the contract terms. (Doc. 29 at 738-39; Doc. 29-8 at 770.) Balboa also misstated in that response that it had sent Moore the Notice of Default on April 19, 2025, and the Acceleration Demand Letter on April 20, 2025, when Balboa had allegedly sent those on March 19, 2025, and March 20, 2025, respectively. (Doc. 29 at 739; Doc. 29-8 at 772.) On April 24, 2025, Balboa filed a lawsuit in the Stark County Court of Common Please against Moore and Hero for breach

[3] In his amended complaint, Moore does not attach the content of these letters. Instead, he attaches proof of delivery and receipt through certified mail. (*See* Docs. 29-2, 29-3, 29-4, 29-5.)

of the EFA and Personal Guaranty. (*See* Doc. 29 at 749; Doc. 29-9.)

On May 13, 2025, Moore filed this action against Balboa, asserting thirteen different causes of action. (*See* Doc. 1.) On June 10, 2025, Balboa moved to dismiss the initial complaint (Doc. 10), and Moore opposed (Doc. 12). In that opposition, Moore also moved to expedite discovery and for sanctions against Balboa. (Doc. 12.) On July 2, 2025, he again moved for sanctions against Balboa and requested immediate injunctive relief. (Doc. 15.) Balboa opposed these motions. (Docs. 17, 24.) On July 16, 2025, Moore moved for leave to amend his complaint (Doc. 22), which the Court granted on September 30, 2025 (Doc. 28). He filed his first amended complaint ("Complaint") on October 7, 2025. (Doc. 29.) Balboa moved to dismiss this Complaint for failure to state a claim. (Doc. 30.) The motion is fully briefed. (Docs. 32, 33.)

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction with an independent obligation to ensure the proper exercise of jurisdiction over each matter before it, even if the parties themselves do not raise a jurisdictional issue. *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (collecting cases). This includes subject matter jurisdiction. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."). If a district court determines it lacks subject matter jurisdiction over an action, it may dismiss the case *sua sponte* pursuant the Federal Rule of Civil Procedure 12(h)(3). Fed. R. Civ. P. 12(h)(3). These obligations apply equally to *pro se* complaints. Even though pleadings drafted by *pro se* litigants "are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief

can be granted," *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

District courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Where a complaint does not allege a specific amount in controversy, courts may infer the amount from the record if the allegations are sufficiently clear. *See Crimaldi v. Pitt Ohio Express, LLC*, 185 F. Supp. 3d 1004, 1008 (N.D. Ohio 2016) (citation omitted). If it appears "to a legal certainty that the claim is really for less than the jurisdictional amount," district courts may dismiss the case for failure to meet the jurisdictional amount requirement. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938), *superseded by statute on other grounds*[4]; *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("sometimes the allegations in the complaint affirmatively show that the claim" is deficient or disallowed as a matter of law).

## III. ANALYSIS

Moore's Complaint[5] fails to satisfy the amount in controversy requirement under Section 1332; therefore, this Court must dismiss the action *sua sponte* for lack of subject matter

---

[4] At the time of this ruling, 28 U.S.C. § 1447(c), the statute detailing procedures after removal of an action to federal court, read "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case." In 1988, the statute was amended to say, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," overturning the Supreme Court's interpretation of the statute in *St. Paul Mecury*. *See Villano ex rel. Villano v. Kohl's Dep't Stores, Inc.*, 362 F. Supp. 2d 418, 420 (S.D.N.Y. 2005).

[5] The Court analyzes whether it has subject matter jurisdiction over this matter from the Complaint, the controlling complaint. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 38, 145 S. Ct. 41, 220 L. Ed. 2d 289 (2025) ("federal jurisdiction—or its absence—follows from the amended complaint").

jurisdiction. In his FAC, Moore alleges four causes of action: (1) fraud and deceit, (2) breach of good faith and fair dealing, (3) violations of Cal. Bus. & Prof. Code § 17200 ("UCL"), and (4) intentional infliction of emotional distress ("IIED"). (Doc. 29 at 741-48.) Moore seeks "compensatory, statutory, and punitive damages, as well as injunctive relief." (Doc. 29 at 735.) Moore does not plead any actual damages or losses, nor does he provide a specific number for any compensatory damages. His allegations further do not provide a plausible basis for the Court to infer a number, and the Court declines to do so. *See Dietz v. Sanders*, 100 F. App'x 334, 338 (6th Cir. 2004) (holding that courts are "not required to conjure up unpled allegations," even when liberally construing *pro se* pleadings). To the contrary, Moore has repeatedly stated that he is not seeking to avoid paying what he contractually owes. (*See, e.g.*, Doc. 29 at 2 ("Plaintiff seeks relief not to avoid legitimate obligations . . . .); Doc. 32 at 865 ("This lawsuit does not seek to invalidate the Equipment Financing Agreement ('EFA') or Personal Guaranty, nor does Plaintiff deny the existence of payment obligations.") He also fails to adequately allege what ill-gotten gains Balboa received in violation of the UCL. (*See* Doc. 29 at 17.) Thus, the Court cannot consider either of those in determining the amount in controversy.

**A. Value of Injunctive Relief**

"Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021). The Sixth Circuit has acknowledged that injunctive relief may be considered in evaluating the amount in controversy. *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) ("it is well established that the amount in controversy is measured by the value of the object of the litigation.") (internal quotation omitted). The cost of complying with an injunction may also be used to value injunctive relief. *See id.*

While Moore does not specify what specific conduct he seeks to enjoin (*see* Doc. 29 at

750), the Court infers from the Complaint that Moore may be asking the Court to enjoin Balboa from contacting him or his family members for collection purposes. However, he has not alleged or pled sufficient facts for the Court to deduce the value of that conduct. Perhaps Moore seeks injunctive relief from the acceleration clause (Doc. 29-13 at 812), in which case, the Court would value the injunction at $44,513.28, the remaining debt on the EFA. (Doc. 29-7 at 767.) This may also be the cost to Balboa of complying with any injunction enjoining it from exercising the acceleration clause. However, as discussed above, Moore has emphasized that he is not seeking to avoid his contractual obligations, and he does not contend the validity of the EFA or the acceleration clause in his FAC. (*See* Doc. 29 at 2; Doc. 32 at 865.) Nonetheless, even if the Court accepted this valuation of injunctive relief, it would still not be sufficient to reach the threshold amount in controversy for the additional reasons discussed below.

**B. Punitive Damages**

California allows recovery of punitive damages for common law fraud and IIED. *See* Cal. Civ. Code § 3294(a); *Washington v. Cal. City Correction Ctr.*, 871 F. Supp. 2d 1010, 1032 (E.D. Cal. 2012) ("punitive damages are recoverable for intentional infliction of emotional distress"). "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (quoting *Holley Equip. Corp. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir.1987)). Since Moore is invoking federal jurisdiction, he bears the burden of showing that his claims satisfy the amount in controversy, including when "punitive damages account for a significant portion of the amount-in-controversy requirement." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462-63 (6th Cir. 2010) (where punitive damages would have to comprise $30,000 of the $75,000 requirement). A mere possibility or belief that punitive damages will bring the

amount over the threshold does not suffice. "A conclusion to the contrary would extend federal jurisdiction to every case in which a plaintiff seeks punitive damages from a diverse defendant and undermine the fundamental nature of federal courts as courts of limited jurisdiction." *Bower v. Am. Cas. Co.*, 2001 U.S. App. LEXIS 18053, *10-11 (6th Cir. Aug. 6, 2001).

Moore fails to adequately allege common law fraud or IIED and therefore any punitive damages he may recover under those two claims. Common law fraud requires a showing of (1) misrepresentations of material facts, (2) knowledge that those representations were false, (3) intend to defraud, (4) justifiable reliance, and (5) resulting damages. *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999). Moore lays out what he alleges are misrepresentations of material facts in his FAC. (*See* Doc. 29 at 741-42.) But most of these are not actually misrepresentations. While Balboa's listing the incorrect dates of the Notice of Default and Acceleration Letter in its response to the CFPB may constitute a misrepresentation (Doc. 29 at 739; Doc. 29-8 at 772), Moore does not plausibly allege that he justifiably relied on or suffered damages from this mistake.

Moore likewise has not plausibly pled a claim for IIED. "In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1124 (E.D. Cal. 2014) (quoting *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 745, 122 Cal. Rptr. 2d 787 (2002)). But such conduct is not outrageous unless it exceeds "all reasonable bounds of decency." *Id.* (quoting *Bundren v. Superior Ct.*, 145 Cal. App. 3d 784, 789, 193 Cal. Rptr. 671 (Ct. App. 1983)). Moore has not plausibly alleged that Balboa's collection practices were so outrageous that they exceeded all reasonable bounds of decency, as required to have a claim for IIED under California law. *See id.* at 1123-24. As such, there is no

claim on which he can seek punitive damages that would put the amount in controversy over the jurisdictional requirement. Moore has pleaded himself out of federal court. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

## IV. CONCLUSION

For the reasons stated herein, the Court finds that it does not have subject matter jurisdiction over this action and DISMISSES this case without prejudice pursuant to Fed. R. Civ. P. 12(h)(3). Balboa's Motion to Dismiss (Doc. 30) is DENIED as moot.

**IT IS SO ORDERED.**

Date: September 10, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE